**CHARLES H. TOMPKINS COMPANY and J. A. Jones Construction Company, Joint Venturers, Appellants,**

v.

**LLOYD E. MITCHELL, Inc., and Harry Alexander, Inc., and E. C. Ernst, Inc., as Joint Venturers, Appellees.**

**No. 14280.**

United States Court of Appeals District of Columbia Circuit.

Argued May 19, 1958.

Decided July 31, 1958.

Certiorari Denied Oct. 27, 1958.

See 79 S.Ct. 115.

178

Mr. O. P. Easterwood, Jr., Washington. D. C., with whom Mr. Alan Johnstone, Washington, D. C., was on the brief, for appellants.

Mr. Howard H. Conaway, Baltimore, Md., of the bar of the Court of Appeals of Maryland, pro hac vice, by special leave of Court, with whom Mr. Milton M. Gottesman, Washington, D. C., was on the brief, for appellee Lloyd E. Mitchell, Inc.

Mr. Nicholas J. Chase, Washington, D. C., with whom Mr. Robert W. McChesney, Jr., Washington, D. C., was on the brief, for appellees Harry Alexander, Inc., and E. C. Ernst, Inc.

Before WHITAKER, Judge, United States Court of Claims,* and WILBUR K. MILLER and BAZELON, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Charles H. Tompkins Company and J. A. Jones Construction Company were, as joint venturers, the general contractor on a large construction project. By separate subcontracts, they engaged Lloyd E. Mitchell, Inc., to do the mechanical work required by the plans and specifications, and Harry Alexander, Inc., and E. C. Ernst, Inc., joint venturers, to do the electrical work required thereby.

In the course of construction, a dispute arose between Tompkins-Jones and Mitchell as to whether the latter's subcontract required it to perform certain items of work included in the general contract. Mitchell denied the obligation and demanded arbitration as provided in its subcontract, but in the meantime proceeded with performance of the disputed items as its subcontract stipulated it should do, upon request, pending resolution of the controversy. Tompkins-Jones agreed to the arbitration proceeding, and attempted to make Alexander-Ernst parties thereto, over the latters' protest.

Arbitration was held. The arbitrators dismissed Alexander-Ernst as parties on the ground there was no evidence of a dispute between them and Tompkins-Jones. They found it was not Mitchell's contractual obligation to do the disputed work, and directed Tompkins-Jones to pay Mitchell the actual cost of labor and materials used in performing it pursuant to Tompkins-Jones' demand.

Tompkins-Jones agreed to comply with the arbitration award and requested Mitchell promptly to complete not only its subcontract but also the work about

* Sitting by designation pursuant to the provisions of Section 291(a) of Title 28 United States Code.

which arbitation had been held. Mitchell did so and, as it performed the extra work, it sent invoices therefor (with trifling exceptions not pertinent here), which Tompkins-Jones paid.

About two months after the award, Tompkins-Jones informed Alexander-Ernst that they—not Mitchell—were contractually obliged to do the disputed work. Alexander-Ernst denied the obligation and demanded arbitration to which Tompkins-Jones agreed. After a hearing, the arbitrators decided it was not the obligation of Alexander-Ernst under their subcontract to perform the items of work in dispute.

Although the two arbitration awards had determined that neither subcontractor was contractually obligated to do the work in dispute, and although it had paid Mitchell the sum of $77,636 for performing it as required by the first award, Tompkins-Jones then withheld that sum from moneys due Mitchell and a similar sum from funds due Alexander-Ernst under their subcontracts. They then filed this action in interpleader against both subcontractors, asking the court to decide which was required by its subcontract to do the disputed work and which was entitled to be paid for it.[1]

Mitchell relied upon the first arbitration decision as conclusive that its subcontract did not include the disputed items, alleged that it had been paid therefor quite apart from its subcontract, and said it did not claim the withheld money as compensation therefor. Alexander-Ernst relied upon the second

arbitration decision as conclusively absolving them from any contractual obligation to perform the work in dispute, and disclaimed any right to the withheld money growing out of that work.

Summary judgment went for the two subcontractors, from which Tompkins-Jones appeal. They assert, as they did in the District Court, that the disputed work fell within the scope of one of the two subcontracts, and that in paying Mitchell for its performance, they had in effect made a payment on the price of one or the other of the two subcontracts.

 The argument ignores the fact that Tompkins-Jones were bound by the two arbitration awards, which held that neither subcontractor was obligated to do the disputed work. Although they had paid Mitchell for performing it, they apparently reasoned that, since the items were embraced in the general contract, they were included in one or the other of the two subcontracts, despite the decisions of the arbitrators. Because of this erroneous assumption, they created what was in fact an artificial fund in hand with fictional adverse claimants thereto, by withholding an amount equal to the cost of the extra items from moneys due under each of the subcontracts. In these circumstances, interpleader did not lie.

Moreover, the facts developed in the evidence conclusively show, not only that an action in interpleader was improper, but also that the appellants were not entitled to any other sort of relief, so Rule 54(c), Federal Rules of Civil Procedure, 28 U.S.C.,[2] does not apply. The situa-

---

1. This action by appellants is thus described by them in their brief:

"Appellant thereupon charged the payments which it had made for the disputed work to appellee Mitchell against the price of its subcontract and established a reserve in like amount against the subcontract price of Alexander-Ernst and filed action in the United States District Court for the District of Columbia seeking to interplead the two subcontractors so that a determination could be made by the Court as to which of them was required under its subcontract to perform the disputed work, and which one was

entitled to the fund which appellant held as for the price of the disputed work."

2. The Rule is as follows:

"(c) Demand for Judgment. A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

tion simply is that Tompkins-Jones had to bear the cost of the disputed items which were within the terms of their general contract, but have been authoritatively determined not to be embraced in either subcontract.

Affirmed.